UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| WILLIAM LAGARD, Individually and For Others Similarly Situated,<br><br>v.<br><br>APPALACHIAN FIELD SERVICE, LLC | Case No. 2:24-cv-00560<br><br>Jury Trial Demanded<br><br>Rule 23 Class Action<br>FLSA Collective Action |

## ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. William LaGard brings this class and collective action lawsuit to recover unpaid overtime wages and other damages from Appalachian Field Service, LLC ("AFS").

2. AFS employed LaGard as one of its Day Rate Workers (defined below) in Pennsylvania.

3. AFS pays LaGard and its other Day Rate Workers by the day.

4. LaGard and the other Day Rate Workers regularly work more than 40 hours a week.

5. But AFS does not pay LaGard and its other Day Rate Workers overtime.

6. Instead, AFS pays LaGard and its other Day Rate Workers a flat amount for each day worked, regardless of the total number of hours they worked in a workweek (a "day rate").

7. AFS pays LaGard and its other Day Rate Workers under its uniform day rate pay scheme regardless of any individualized factors.

8. AFS's uniform day rate pay scheme violates the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA") by depriving LaGard and the other Day Rate Workers of overtime when they work more than 40 hours in a week.

1

9. Likewise, AFS's uniform day rate pay scheme violates the Pennsylvania Wage Payment and Collection Law ("WPCL") by depriving LaGard and the other Day Rate Workers of earned overtime wages on their regular paydays and/or following the termination of their employment.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

11. This Court has supplemental jurisdiction of the state-law subclass claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

12. This Court has general personal jurisdiction over AFS because AFS is registered to do business in the Commonwealth. *See Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134 (2023); *see also* 42 PA. CONS. STAT. § 5301.

13. Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

14. Specifically, LaGard primarily worked for AFS in Indiana County, Pennsylvania, which is in this District and Division.

## PARTIES

15. From approximately May 2022 until July 2023, AFS employed LaGard as a Right-of-Way ("ROW") Agent in Pennsylvania.

16. Throughout his employment, AFS paid LaGard according to its illegal day rate pay scheme.

17. LaGard's written consent is attached as **Exhibit 1**.

18. LaGard brings this class and collective action on behalf of himself and all other similarly situated employees who AFS paid according to its illegal day rate pay scheme.

2

19. AFS paid these employees a flat amount for each day worked, regardless of the total number of hours they worked in a workweek.

20. As a result, AFS fails to pay these employees overtime when they work more than 40 hours in a week in violation of the FLSA and PMWA.

21. Likewise, AFS fails to pay these employees earned overtime wages on their regular paydays and/or following the termination of their employment in violation of the FLSA.

22. The FLSA Collective of similarly situated employees is defined as:

> **All AFS employees who were paid day rate with no overtime at any time during the past 3 years (the "FLSA Collective Members").**

23. LaGard also seeks to represent a class under the PMWA and WPCL pursuant to FED. R. CIV. P. 23.

24. The Pennsylvania Class of similarly situated employees is defined as:

> **All AFS employees in, or based out of, Pennsylvania[1] who were paid day rate with no overtime at any time during the past 3 years (the "Pennsylvania Class Members").**

25. The FLSA Collective Members and the Pennsylvania Class Members are collectively referred to as the "Day Rate Workers."

26. AFS is a, Ohio corporation headquartered in Columbus, Ohio.

---

[1] The PMWA and WPCL apply to Pennsylvania workers, regardless of the state in which the work is performed. *Truman v. DeWolff, Boberg & Assocs., Inc.*, No. 07-01702, 2009 WL 2015126, at *2 (W.D. Pa. July 7, 2009) ("In light of the FLSA's explicit recognition that states may offer greater protections to its employees than the FLSA, we are reluctant to find an unstated foreign-work exemption in the PMWA based solely on the fact that the FLSA contains such an exemption."). Courts apply a five-factor test for purposes of the PMWA and WPCL to determine whether workers are based in Pennsylvania, which include (1) employer's headquarters; (2) employee's physical presence working in Pennsylvania; (3) extent of employee's contact with Pennsylvania Employer, i.e., reporting, direction, supervision, hiring, assignment, and termination; (4) employee's residence; and (5) employee's ability to bring her claim in another forum. *See Matthews v. BioTelemetry, Inc.*, No. 18-561, 2018 WL 3648228, at *3 (E.D. Pa. July 31, 2018).

3

27.     AFS can be served through its registered agent: **Penncorp Service Group, Inc., 600 North 2nd Street, 4th Floor, Harrisburg, Pennsylvania 17101**.

## FLSA Coverage

28.     At all relevant times, AFS was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

29.     At all relevant times, AFS was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

30.     At all relevant times, AFS was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, pens, paper, etc.—that have been moved in or produced for commerce.

31.     At all relevant times, AFS has had an annual gross volume of sales made or business done of $1,000,000 each year.

32.     At all relevant times, LaGard and the other Day Rate Workers were AFS's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

33.     At all relevant times, LaGard and the other Day Rate Workers were engaged in commerce or in the production of goods for commerce.

34.     AFS uniformly paid LaGard and its other Day Rate Workers according to its illegal day rate pay scheme.

35.     AFS applied its illegal day rate pay scheme to its Day Rate Workers regardless of any alleged individualized factors, such as specific job title or geographic location.

36.     By paying LaGard and its other Day Rate Workers a day rate, AFS did not pay them overtime when they worked more than 40 hours in a workweek.

37. AFS's uniform day rate pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

38. AFS bills itself as "a premier provider of right-of-way services … with a strong presence throughout the Midwest, Mid-Atlantic, and Southeast regions of the US and extending west into Texas."[2]

39. To meet its business objectives, AFS hires workers, like LaGard and the other Day Rate Workers, to provide the right-of-way land services it markets to its clients.

40. AFS uniformly pays these employees (including LaGard and the other Day Rate Workers) according to its illegal day rate pay scheme.

41. While exact job titles and precise job duties may differ, these employees are subjected to the same or similar illegal pay practice—AFS's day rate pay scheme—for similar work.

42. For example, LaGard worked for AFS as a ROW Agent in Pennsylvania from approximately May 2022 until July 2023.

43. As a ROW Agent, LaGard's primary duties included researching, reviewing, and compiling property, mineral, title, and other land ownership records for AFS's clients.

44. Throughout his employment, LaGard typically worked 8 hours a day for 6 days a week (or 48 hours a week).

45. LaGard worked in accordance with the schedule set by AFS.

46. Despite knowing LaGard regularly worked overtime, AFS did not pay him overtime.

47. Instead, AFS paid LaGard under its illegal day rate pay scheme.

---

[2] https://www.afsrow.com/ (last visited April 12, 2024).

48. Specifically, AFS paid LaGard approximately $350 each day he actually worked, regardless of the number of hours he worked that day (or that week).

49. As a result, AFS failed to pay LaGard overtime when he worked over 40 hours in a week in violation of the FLSA and PMWA.

50. Likewise, AFS failed to pay LaGard these earned overtime wages on his regular pay days and following the termination of his employment.

51. AFS pays its other Day Rate Workers according to the same illegal day rate pay scheme it imposed on LaGard.

52. That is, just as with LaGard, AFS pays its other Day Rate Workers on a day rate basis and fails to pay them overtime when they work more than 40 hours in a week.

53. Like LaGard, the other Day Rate Workers typically work 8 hours a day for 6 days a week (or 48 hours a week).

54. And like LaGard, the other Day Rate Workers work in accordance with the schedule set by AFS.

55. Despite knowing its Day Rate Workers regularly work overtime, AFS does not pay them overtime wages.

56. Instead, AFS pays its Day Rate Workers a flat amount for each day worked, regardless of the number of hours they worked that day (or that week).

57. As a result, AFS fails to pay its Day Rate Workers overtime when they work more than 40 hours in a week in violation of the FLSA and PMWA.

58. Likewise, AFS fails to pay its Day Rate Workers these earned overtime wages on their regular paydays and/or following the termination of their employment in violation of the WPCL.

59. AFS never paid LaGard and the other Day Rate Workers on a "salary basis."

60. AFS does not pay LaGard and the other Day Rate Workers a guaranteed salary that is not subject to reduction based on the quality or quantity worked.

61. If LaGard and the other Day Rate Workers do not work, they do not get paid.

62. Rather, AFS only pays LaGard and the other Day Rate Workers their set day rates for the actual days they work.

63. LaGard's and the other Day Rate Workers' day rates do not increase when they work more than 40 hours in a week.

64. Thus, AFS never paid LaGard and its other Day Rate Workers on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 143 S. Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

65. Because AFS fails to pay LaGard and its other Day Rate Workers on a "salary basis," they are all non-exempt employees entitled to overtime.

66. But AFS does not pay LaGard and its other Day Rate Workers overtime when they work more than 40 hours in a week in violation of the FLSA and Pennsylvania law.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

67. LaGard incorporates all other paragraphs by reference.

68. Like LaGard, the other Day Rate Workers are victimized by AFS's illegal day rate pay scheme.

69. Other Day Rate Workers worked with LaGard and indicated they were paid in the same manner, performed similar work, and were subject to AFS's same illegal day rate pay scheme.

70. Based on his experience with AFS, LaGard is aware AFS's illegal day rate pay scheme was imposed on the other Day Rate Workers.

71. The Day Rate Workers are similarly situated in the most relevant respects.

72. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

73. Any relevant exemption defenses would require AFS to pay the Day Rate Workers on a "salary basis."

74. Because AFS fails the "salary basis" test with respect to the Day Rate Workers, the specific job duties performed by those employees are largely irrelevant.

75. The only *relevant* inquiry is whether the Day Rate Workers were paid a day rate with no overtime wages when they worked more than 40 hours in a week (which, by definition, they were).

76. Therefore, the specific job titles or precise job locations of the various Day Rate Workers do not prevent class or collective treatment.

77. Rather, AFS's uniform day rate pay scheme renders LaGard and the other Day Rate Workers similarly situated for the purposes of determining their right to overtime pay.

78. AFS's records reflect the number of days and/or hours the Day Rate Workers worked each week.

79. AFS's records also show it paid the Day Rate Workers a day rate with no overtime wages when they worked more than 40 hours in a week.

80. The backwages owed to LaGard and the other Day Rate Workers can therefore be calculated using the same formula applied to the same records.

81. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to AFS's records, and there is no detraction from the common nucleus of liability facts.

82. Therefore, the issue of damages does not preclude class or collective treatment.

83. LaGard's experiences are therefore typical of the experiences of the other Day Rate Workers.

84. LaGard has no interest contrary to, or in conflict with, the other Day Rate Workers that would prevent class or collective treatment.

85. Like each Day Rate Worker, LaGard has an interest in obtaining the unpaid wages owed under federal and Pennsylvania law.

86. A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

87. Absent this class and collective action, many Day Rate Workers will not obtain redress for their injuries, and AFS will reap the unjust benefits of violating the FLSA and Pennsylvania law.

88. Further, even if some of the Day Rate Workers could afford individual litigation, it would be unduly burdensome to the judicial system.

89. Indeed, the multiplicity of actions would create a hardship to the Day Rate Workers, the Court, and AFS.

90. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Day Rate Workers' claims.

91. The questions of law and fact that are common to each Day Rate Worker predominate over any questions affecting solely the individual members.

92. Among the common questions of law and fact are:

    a. Whether AFS's day rate pay scheme deprived the Day Rate Workers of overtime when they worked more than 40 hours in a week in violation of the FLSA and PMWA;

    b. Whether AFS's day rate pay scheme deprived the Day Rate Workers of earned overtime wages on their regular paydays and/or following the termination of their employment in violation of the WPCL;

9

      c.      Whether AFS's decision to misclassify its Day Rate Workers as exempt was made in good faith;

      d.      Whether AFS's decision not to pay its Day Rate Workers overtime was made in good faith;

      e.      Whether AFS's failure to pay its Day Rate Workers earned wages was the result of a *bona fide* dispute; and

      f.      Whether AFS's FLSA violations were willful.

93. LaGard knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

94. AFS's illegal day rate pay scheme deprived LaGard and the other Day Rate Workers of the overtime wages they are owed under federal and Pennsylvania law.

95. There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

96. The Day Rate Workers are known to AFS and can be readily identified and located through AFS's business and personnel records.

### AFS'S FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

97. LaGard incorporates all other paragraphs by reference.

98. AFS knew it was subject to the FLSA's overtime provisions.

99. AFS knew the FLSA required it to pay non-exempt employees, including the Day Rate Workers, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

100. AFS knew each Day Rate Worker worked more than 40 hours in at least one workweek during the relevant period.

101. AFS knew it paid its Day Rate Workers on a daily basis.

102. AFS knew it paid its Day Rate Workers a day rate (with no overtime for their hours worked over 40 in a week).

103. AFS knew it did not pay its Day Rate Workers on a "salary basis."

104. AFS knew it did not pay its Day Rate Workers any guaranteed salary that was not subject to reduction based on the number of days worked.

105. AFS knew that any "salary" the Day Rate Workers purportedly received was not "reasonably related" to their actual earnings.

106. Thus, AFS knew its day rate pay scheme did not satisfy the "salary basis" test.

107. AFS knew it needed to pass the "salary basis" test to qualify for the exemptions it claimed with respect to its Day Rate Workers.

108. Nonetheless, AFS uniformly misclassified its Day Rate Workers as exempt and refused to pay them overtime.

109. AFS knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA (and Pennsylvania law).

110. AFS knowingly, willfully, and/or in reckless disregard carried out its illegal day rate pay scheme that systematically deprived the Day Rate Workers of overtime for their hours worked over 40 in a workweek in violation of the FLSA (and Pennsylvania law).

### AFS'S FLSA VIOLATIONS WERE NOT DONE IN GOOD FAITH

111. LaGard incorporates all other paragraphs by reference.

112. AFS did not seek the advice of counsel regarding classifying its Day Rate Workers as exempt.

113. AFS did not receive advice from counsel regarding classifying its Day Rate Workers as exempt.

114. AFS did not rely on the advice of counsel in deciding to classify its Day Rate Workers as exempt.

115. AFS did not seek the advice of counsel regarding paying its Day Rate Workers a day rate with no overtime.

116. AFS did not receive advice from counsel regarding paying its Day Rate Workers a day rate with no overtime.

117. AFS did not rely on the advice of counsel in deciding to pay its Day Rate Workers a day rate with no overtime.

118. AFS did not investigate whether its day rate pay scheme satisfied the "salary basis" test.

119. AFS did not investigate whether its Day Rate Workers were non-exempt.

120. AFS's decision to misclassify its Day Rate Workers as exempt was neither reasonable nor made in good faith.

121. AFS's decision not to pay its Day Rate Workers overtime was neither reasonable nor made in good faith.

### COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

122. LaGard incorporates all other paragraphs by reference.

123. LaGard brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

124. AFS violated, and is violating, the FLSA by employing non-exempt employees (LaGard and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

125. AFS's unlawful conduct harmed LaGard and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

126. Accordingly, AFS owes LaGard and the other FLSA Collective Members the difference between the rate actually paid and the proper overtime rate.

127. Because AFS knew, or showed reckless disregard for whether, its day rate pay scheme violated the FLSA, AFS owes LaGard and the other FLSA Collective Members these wages for at least the past 3 years.

128. AFS is also liable to LaGard and the other FLSA Collective Members for an amount equal to all their unpaid wages as liquidated damages.

129. Finally, LaGard and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
### (PENNSYLVANIA CLASS)

130. LaGard incorporates all other paragraphs by reference.

131. LaGard brings his PMWA claim as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

132. AFS's conduct violates the PMWA (43 PA. STAT. §§ 333.101, *et seq.*).

133. At all relevant times, AFS was subject to the PMWA because AFS was (and is) an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

134. At all relevant times, AFS employed each Pennsylvania Class Member as its covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

135. The PMWA requires employers, like AFS, to pay non-exempt employees, including LaGard and the other Pennsylvania Class Members, overtime at rates not less than 1.5 times their

regular rates of pay for all hours worked after 40 in a week. 43 PA. STAT. § 333.104(c); *see* 34 PA. CODE §§ 231.41-43.

136. By imposing its illegal day rate pay scheme on LaGard and the other Pennsylvania Class Members, AFS violated 43 PA. STAT. § 333.104(c) and/or 34 PA. CODE §§ 231.41-43.

137. Specifically, AFS violated, and is violating, the PMWA by employing non-exempt employees (LaGard and the other Pennsylvania Class Members) for workweeks longer than 40 hours without paying such employees overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a week. *See* 43 PA. STAT. § 333.104(c); *see also* 34 PA. CODE §§ 231.41-43.

138. AFS's unlawful conduct harmed LaGard and the other Pennsylvania Class Members by depriving them of the overtime wages they are owed.

139. Accordingly, AFS owes LaGard and the other Pennsylvania Class Members the difference between the rate actually paid and the proper overtime rate plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 333.113.

140. Finally, LaGard and the other Pennsylvania Class Members are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 PA. STAT. § 333.113.

### COUNT III

#### FAILURE TO PAY EARNED WAGES UNDER THE WPCL
#### (PENNSYLVANIA CLASS)

141. LaGard incorporates all other paragraphs by reference.

142. LaGard brings his WPCL claim as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

143. AFS's conduct violates the WPCL (43 PA. STAT. §§ 260.1, *et seq.*).

144. At all relevant times, AFS was subject to the WPCL because AFS was (and is) an "employer" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

145. At all relevant times, AFS employed LaGard and each Pennsylvania Class Member as its covered "employees" within the meaning of the WPCL.

146. The WPCL requires employers, like AFS, to pay employees, including LaGard and the other Pennsylvania Class Members, all wages (including overtime) earned, due, and owing to them on their regular payday(s) and following the termination of their employment. 43 PA. STAT. §§ 260.3 and 260.5.

147. AFS violated, and is violating, the WPCL by depriving its Pennsylvania Class Members of the overtime wages earned, due, and owing to them on their regular paydays and/or following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

148. LaGard's and the other Pennsylvania Class Members' earned wages have remained unpaid for more than 30 days from the date they were earned, due, and payable.

149. AFS's unlawful conduct harmed LaGard and the other Pennsylvania Class Members by depriving them of the earned wages they are owed.

150. AFS's failure to pay LaGard and the other Pennsylvania Class Members earned wages was not the result of a *bona fide* dispute.

151. Rather, AFS knowingly failed to pay earned wages to LaGard and the other Pennsylvania Class Members.

152. Accordingly, AFS owes LaGard and the other Pennsylvania Class Members their unpaid earned wages plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 260.9a.

153. AFS also owes LaGard and the other Pennsylvania Class Members liquidated damages in an amount equal to 25% of their unpaid wages. *See* 43 PA. STAT. § 260.10.

154. Finally, LaGard and the other Pennsylvania Class Members are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 PA. STAT. § 260.9a(f).

## JURY DEMAND

155.  LaGard demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, LaGard, individually and on behalf of the other Day Rate Workers, seeks the following relief:

a.  An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Day Rate Workers allowing them to join this action by filing a written notice of consent;

b.  An Order certifying this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.  An Order appointing LaGard and his counsel to represent the interests of the Day Rate Employees;

d.  An Order finding AFS liable to LaGard and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA plus liquidated damages in an amount equal to their unpaid wages;

e.  An Order finding AFS liable to LaGard and the other Pennsylvania Class Members for unpaid overtime wages owed under the PMWA plus all available penalty wages;

f.  An Order finding AFS liable to LaGard and the other Pennsylvania Class Members for unpaid earned wages owed under the WPCL plus liquidated damages in an amount equal to 25% of their unpaid wages;

g.  A Judgment against AFS awarding LaGard and the other Day Rate Workers all their unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA, PMWA, and WPCL;

  h.  An Order awarding attorney's fees, costs, and expenses;

  i.  Pre- and post-judgment interest at the highest applicable rates; and

  j.  Such other and further relief as may be necessary and appropriate.

Dated: April 12, 2024        Respectfully submitted,

                **JOSEPHSON DUNLAP LLP**

                By: */s/ Michael A. Josephson*
                  Michael A. Josephson
                  PA ID No. 308410
                  Andrew W. Dunlap
                  TX Bar No. 24078444
                  11 Greenway Plaza, Suite 3050
                  Houston, Texas 77046
                  Phone: (713) 352-1100
                  Fax:  (713) 352-3300
                  mjosephson@mybackwages.com
                  adunlap@mybackwages.com

                  Richard J. (Rex) Burch
                  TX Bar No. 24001807
                  **BRUCKNER BURCH PLLC**
                  11 Greenway Plaza, Suite 3025
                  Houston, Texas 77046
                  Phone: (713) 877-8788
                  Fax:  (713) 877-8065
                  rburch@brucknerburch.com

                  Joshua P. Geist
                  PA ID No. 85745
                  William F. Goodrich
                  PA ID No. 30235
                  **GOODRICH & GEIST, PC**
                  3634 California Avenue
                  Pittsburgh, Pennsylvania 15212
                  Phone: (412) 766-1455
                  Fax:  (412) 766-0300
                  josh@goodrichandgeist.com
                  bill@goodrichandgeist.com

                **ATTORNEYS FOR LAGARD
                & THE DAY RATE WORKERS**