## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | |
|---|---|
| WILLIAM LAGARD, Individually and For Others Similarly Situated, <br><br> v. <br><br> APPALACHIAN FIELD SERVICE, LLC | **Case No. 2:24-cv-00560-PLD** <br><br> Jury Trial Demanded <br><br> Rule 23 Class Action <br> FLSA Collective Action |

## JOINT MOTION TO APPROVE SETTLEMENT

Michael A. Josephson
PA Bar No. 308410
Andrew W. Dunlap
Texas Bar No. 24078444
Alyssa J. White
Texas Bar No. 24073014
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
awhite@mybackwages.com

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

Joshua P. Geist
PA ID No. 85745
William F. Goodrich
PA ID No. 30235
**GOODRICH & GEIST, PC**
3634 California Avenue
Pittsburgh, Pennsylvania 15212
Phone: (412) 766-1455
Fax: (412) 766-0300
josh@goodrichandgeist.com
bill@goodrichandgeist.com
*ATTORNEYS IN CHARGE FOR PLAINTIFF*

Richard L. Etter
PA ID NO. 92835
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
One PPG Place, Suite 1900
Pittsburgh, PA 15222
Telephone: (412) 230-8963
rick.etter@ogletree.com

*ATTORNEY FOR DEFENDANT*

## TABLE OF CONTENTS

1. INTRODUCTION. ...................................................................................................................1

2. FACTUAL AND PROCEDURAL BACKGROUND. ...........................................................1

3. SUMMARY OF THE SETTLEMENT TERMS. ...............................................................2

    A.    Gross Settlement Amount ...........................................................................................2

    B.    Payments to the Collective .........................................................................................2

    C.    Enhancement Award....................................................................................................3

    D.    Notice Procedure..........................................................................................................3

    E.    Release ...........................................................................................................................4

    F.    Attorneys' Fees and Litigation Costs........................................................................4

4. ARGUMENT AND AUTHORITIES. ..................................................................................5

    A.    A *Bona Fide* Dispute Existed ......................................................................................5

    B.    The Parties' Proposed Agreement is Fair and Reasonable....................................8

    C.    LaGard's Enhancement Award is Reasonable .....................................................10

    D.    Plaintiff's Counsel's Fee and Costs Award are Reasonable and Customary. .....11

        i.    Size of the Fund and the Number of Beneficiaries. ...............................12

        ii.    The Absence of Substantial Objections.....................................................12

        iii.    Plaintiff's Counsel's Skill and Efficiency. ................................................13

        iv.    The Complexity and Duration of the Litigation. ....................................14

        v.    The Risk of Nonpayment. ..........................................................................14

        vi.    Plaintiff's Counsel Devoted Substantial Time to the Case.....................14

        vii.    Fee Awards in Similar Cases Support the Requested Fee Award. .................15

        viii.    Benefits Attributable to Plaintiff's Counsel Relative to Other Groups.......................16

        ix.    Plaintiff's Counsel's Out-of-Pocket Expenses Should be Approved...........................16

5. DISMISSAL OF THE LAWSUIT WITH PREJUDICE............................................................17

6. CONCLUSION. ..................................................................................................................18

1. **INTRODUCTION.**

Plaintiff William LaGard ("LaGard" or "Plaintiff") and Defendant Appalachian Field Service, LLC ("AFS" or "Defendant") (collectively, the "Parties") have agreed, subject to Court approval, to resolve this wage and hour lawsuit. The settlement, which followed a thorough investigation, satisfies the criteria for approval of an FLSA settlement because it resolves a bona-fide dispute, was reached after in-depth investigation and review of documentary evidence and payroll data, was the result of arm's-length settlement negotiations between experienced counsel and provides good value to the Plaintiff and the Putative Class Members. *See* Exhibit 1, Settlement Agreement.

Plaintiff now respectfully requests that the Court issue an order approving the Settlement and dismissing the lawsuit with prejudice.

2. **FACTUAL AND PROCEDURAL BACKGROUND.**

LaGard brought this class and collective action in the United State District Court for the Western District of Pennsylvania on April 12, 2024, to recover unpaid wages and other damages for himself and all others similarly situated under the Pennsylvania Minimum Wage Act ("PMWA"), the Pennsylvania Wage Payment and Collection Law ("WPCL"), and the Fair Labor Standards Act ("FLSA"). *See* 43 Pa. Stat. Ann. § 333.104; 43 Pa. C.S. § 260.3; 29. U.S.C. §216(b) *et seq.* In his complaint, LaGard alleged AFS failed to pay him and similarly situated employees overtime compensation for hours worked over 40 in a single workweek in violation of the PMWA and FLSA. Instead, LaGard alleged AFS paid him and other employees according to an illegal "day rate" pay plan. *See* Doc. 1 at ¶¶ 7-9. LaGard sought to bring his claims on behalf of:

> "All AFS employees who were paid a day rate with no overtime at any time during the past 3 years (the "FLSA Collective Members").

*Id.* at ¶ 22.

LaGard further sought to certify a class consisting of workers in or based out of Pennsylvania, defined as:

"All AFS employees in, or based out of, Pennsylvania who were paid a day rate with no overtime at any time during the past 3 years (the "Pennsylvania Class Members")."

*Id.* at ¶ 24.

LaGard's Complaint sought recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages. *Id.* at ¶¶ 125-129. AFS disputed all material allegations, maintaining that LaGard and the Class Members were properly compensated for all hours worked. *See generally* Doc. 15. On July 16, 2024, the Parties filed their Stipulation Selecting ADR Process (Doc. 26) selecting David B. White as mediator. On September 19, 2024, the Parties attended mediation and ultimately reached a settlement of all claims memorialized in the attached Settlement and Release Agreement. *See* Ex. 1. As part of the settlement agreement, the Parties agreed to resolve this matter pursuant to the FLSA with an agreed notice process. *See* Ex. 1 at ¶ 8(a)-8(c).

**3.  SUMMARY OF THE SETTLEMENT TERMS.**

   **A.  Gross Settlement Amount**

The Settlement Agreement establishes a Gross Settlement Amount of $230,000, which consists of (1) the negotiated settlement payments for distribution to LaGard and the Collective Members; (2) LaGard's enhancement award; and (3) a negotiated award of attorneys' fees and costs. Ex. 1 at ¶ 5.

   **B.  Payments to the Collective**

A maximum net settlement amount of $129,920.75 will go to the FLSA collective members divided pro rata based on their time worked at Chemstream. *See* Ex. 1 at ¶¶ 5, 8; Exhibit 2, Allocation Sheet. Each of the Settlement Plaintiffs will be mailed a Notice and Claim Form (attached hereto as Exhibit 3). Settlement Plaintiffs who timely complete, sign, and return their Claim Form will be send two checks, which will contain their total settlement allocation. Ex. 1 at ¶ 11. The first check will comprise 50% of the total allocation, and shall consist of back wages, from which taxes will be withheld and for which a W-2 form will be issued. *Id.* The second check will comprise 50% of the

2

total allocation, and shall consist of liquidated damages, for which a Form 1099 will be issued. *Id.* The portion allocated to claims for unpaid overtime and other wage-related damages shall be inclusive of all employer payments of taxes, including but not limited to FICA and FUTA taxes, and subject to all required employee paid payroll taxes and deductions (e.g., federal income taxes, state income taxes, employee's share of FICA taxes, and other state-specific statutory deductions) and other required deductions (e.g., garnishments, tax liens, child support). Ex. 1 at ¶ 12. Individuals who choose to timely endorse, cash, deposit, or otherwise claim a settlement payment will release any and all wage and hour related claims under applicable federal and applicable state laws against AFS in exchange for their payment. *Id.* at ¶ 7. Individuals who do not timely endorse, cash, deposit, or otherwise claim their settlement payment will retain their claims under the FLSA. *Id.* at ¶¶ 4, 11.

### C. Enhancement Award

LaGard will receive an enhancement award of $5,000 as adequate consideration for execution of a separate General Release Agreement. Ex. 1 at ¶ 5. The enhancement award will be paid in addition to the Settlement Check owed to LaGard.

### D. Notice Procedure

Upon approval by the Court, within ten (10) days, AFS will produce a class list, including names, addresses or last known addresses, and email addresses numbers to Plaintiff's Counsel. *See* Ex. 1 at ¶ 8(a). Within 30 days of the approval date, Plaintiff's Counsel shall send the Notice and Claim Forms to the Settlement Plaintiffs via U.S. Mail and electronic mail. *Id.* at ¶ 8(b). The Settlement Plaintiffs shall have 60 days (the "Opt-In Period") from the earlier of the date that the Notice and Claim Forms are post-marked, faxed, or e-mailed, to complete, sign, and return the Claim Form to Plaintiff's Counsel. *Id.* The Settlement Plaintiffs who timely return a completed and signed Claim Form during the Opt-In Period will be eligible to receive their share of the Net Settlement Amount. *Id* at

8(c). The Settlement Checks will remain valid for ninety (90) days from the date of the check. *Id.* at ¶ 8(d).

To participate in the settlement, the Settlement Plaintiff must timely endorse, cash, deposit, or otherwise claim their Settlement Check within the ninety (90) day period the Settlement Check is valid. *Id.* at ¶ 11. Any Settlement Checks that are not endorsed, deposited, cashed, or otherwise claimed within ninety (90) days from the date of the check shall be deemed expired and the monies thereof shall revert to AFS. *Id.*

**E. Release**

Plaintiff LaGard and each Settlement Plaintiff, who by timely endorsing, cashing, depositing, or otherwise claiming the Settlement Check, shall release AFS "from all federal and applicable state and local wage and hour actions, causes of actions, demands, damages, attorneys' fees, costs, loss of wages, interest (the "Released Claims"), including but not limited to those that arose or are in any way related to improper classification, failure to pay wages, failure to pay for meal/rest breaks, failure to pay overtime and/or premium rates, failure to provide timely and accurate wage notices, failure to provide timely and accurate wage statements, or otherwise relate to scheduling, payment of wages and/or overtime, and failure to timely pay wages, and any other relief permitted to be recovered on, related to, or in any way growing out of any claims in the Lawsuit regarding events that occurred or are alleged to have occurred from April 12, 2021 through the date the settlement is approved." *Id.* at ¶ 7.

**F. Attorneys' Fees and Litigation Costs**

Under the Settlement Agreement and as negotiated for Plaintiff's Counsel will receive 92,000[1]

---

[1] The Third Circuit has noted that fee awards generally range from 19% to 45% of the Settlement fund. *See Brumley*, 2012 WL 1019337, at *12 (approving fee of one-third of the common fund and citing *In re Gen. Motors Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995)).

as attorneys' fees, plus reimbursement of $3,079.25,[2] which represents reasonable out-of-pocket costs and expenses incurred in litigating and resolving this matter and the continued work obtaining the approval of this Settlement Agreement. *See* Ex. 1, at ¶ 5.

**4.  ARGUMENT AND AUTHORITIES.**

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). Because of the public interest in FLSA rights, there are only two ways that FLSA claims can be settled or compromised by employees: (1) a compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c); or (2) a district court-approved compromise pursuant to 29 U.S.C. § 216(b)." *Adams v. Bayview Asset Mgmt., LLC*, 11 F.Supp.3d 474, 476 (E.D. Pa. Feb. 26, 2014) (citing *Lynn's Food Stores Inc. v. United States Dept. of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982)). In the latter situation, "a district court may enter a stipulated judgment after determining that the proposed settlement 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Dino v. Pennsylvania, C.A.* 1:08–cv–01493, 2013 WL 4041681, at *3 (M.D. Pa. Aug. 8, 2013) (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1352); *Vargas v. Gen. Nutrition Centers, Inc.*, C.A. 2:10-cv-00867, 2015 WL 4155449, at *1 (W.D. Pa. Mar. 20, 2015).

**A.  A *Bona Fide* Dispute Existed**

A dispute is "bona fide" when it involves "factual issues" rather than "legal issues such as the statute's coverage and applicability," *Lignore v. Hosp. of Univ. of Pa.*, C.A. 2:04-cv-05735, 2007 WL 1300733, at *3 (E.D. Pa. May 1, 2007) (quoting *Morris v. Penn Mut. Life Ins. Co.*, CIV. A. No. 87-7063,

---

[2] In addition to being entitled to reasonable attorneys' fees, the FLSA and Pennsylvania wage and hour law provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b); 43 P.S. § 333.113 ("worker may recover in a civil action the full amount of such minimum wage less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court…").

1989 WL 14063, at *4 (E.D. Pa. 1989)), and when its settlement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching…." *Brumley v. Camin Cargo Control, Inc.*, C.A. 2:08-cv-01798, 2012 WL 1019337, at *2 (D. N.J. Mar. 26, 2012) (quoting *Lynn's Food*, 679 F.2d at 1354); *see also Creed v. Benco Dental Supply Co., C.A.* 3:12-cv-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013).

Further, Congress has recognized that due to the unequal bargaining power between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part that endangered national health and efficiency and, as a result, the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945).[3] This inherent inequality, of course, is diminished when workers are represented by experienced counsel. *See, e.g., Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D. N.Y. 2013) (giving weight to the fact that "plaintiffs were represented by highly competent counsel"); *see also Austin v. Pennsylvania Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("In determining the fairness of a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class.").

Courts can therefore approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *Fletcher v. Campbell Dev. LLC*, No. CV 20-641, 2020 WL 7385285, at *1 (W.D. Pa. Dec. 16, 2020). In the Third Circuit, a settlement agreement is entitled to a presumption of fairness when it resulted from arm's length negotiations between experienced counsel. *In re Gen. Motors*, 55 F.3d at 800. "If the proposed FLSA settlement reflects a reasonable compromise

---

[3] *Brooklyn Savings Bank*, 324 U.S. 697 (1945) (requiring Court or Department of Labor approval for FLSA settlements, and explaining the low standard for judicial review when the parties are represented by counsel); *see also Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986) (in deciding whether the proposed settlement reflects a "reasonable compromise" of a bona fide dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

over contested issues, it should be approved." *McMahon v. Olivier Cheng Catering & Events, LLC*, C.A. 1:08-cv-08713, 2010 WL 2399328, at *6 (S.D. N.Y. Mar. 3, 2010).

There is no question the Parties' Agreement is a result of fiercely contested litigation. The Parties resolved this lawsuit after months of litigation only after informal discovery, the production of hundreds of pages of documents and class data, and a mediation. The Parties vehemently contested the claims and defenses asserted. LaGard claimed AFS failed to pay him and the putative class/collective members overtime compensation for hours worked over 40 in a workweek. *See* Complaint at ¶¶ 7-9. Throughout this litigation, AFS consistently denied LaGard's allegations. *See generally* Doc. 15. The Parties disputed liability in this case, and only through ongoing arm's-length negotiations were they able to reach a compromise. LaGard continues to believe the claims he seeks to settle here have merit, but he and Plaintiff's Counsel recognize and acknowledge the uncertain outcome and risk of continuing with this litigation. LaGard also recognizes the expense and complexity of continued proceedings necessary to prosecute the claims through trial as well as the difficulties and delay inherent in FLSA litigation. He also believes the resolution set forth in the Parties' Agreement confers substantial benefits to him and the Putative Class Members who choose to participate in the settlement. Based on this evaluation, LaGard and Plaintiff's Counsel have determined the Parties' Agreement is in LaGard's and the Putative Class Members' best interests.

AFS also vigorously denied and continues to dispute all the claims alleged in this litigation and denies any and all allegations of wrongdoing, fault, liability, or damage of any kind to LaGard and the Putative Class Members. Ex. 1 at ¶ 14. Like LaGard, AFS recognizes the risks and potential costs of continued litigation compared with the benefit of the Parties' proposed Agreement and desires to settle this lawsuit as set forth in the Agreement. Because the Parties contest liability and the appropriate amount of overtime owed, if any, there is no question a bona fide dispute exists. The Parties

acknowledge their claims and defenses pose risks, which informed, in part, their decision to resolve the bona fide disputes between them.

**B. The Parties' Proposed Agreement is Fair and Reasonable.**

Courts presented with a proposed settlement of an FLSA claim engage in a two-part analysis. First, the Court must determine if the settlement is fair and reasonable to the employee or employees involved. *See McGee v. Ann's Choice, Inc.*, C.A. 2:12-cv-02664, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014). If it is, the Court next considers "whether the agreement furthers or impermissibly frustrates the implementation of FLSA in the workplace." *Id.* at *4; *see also Lyons v. Gerhard's Inc.*, C.A. 2:14-cv-06693, 2015 WL 4378514, at *3-4 (E.D. Pa. July 16, 2015).

"It is helpful to recall the guiding principles of settlement in modern litigation, bearing in mind the unique role played by the Court in FLSA collective action disputes." *Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12-CV-0718, 2013 WL 2338496, at *4 (M.D. Pa. May 29, 2013). The standard for approval of FLSA settlements is comparatively lenient. "[U]nlike its role in Rule 23 actions to serve as caretaker and protect absent class members, the court in FLSA class actions serves as gatekeeper to ensure that the parties are not 'negotiating around the clear FLSA requirements' via settlement." *Acevedo v. Brightview Landscapes, LLC*, No. CV 3:13-2529, 2017 WL 4354809, at *13 (M.D. Pa. Oct. 2, 2017) (quoting *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at 18 (D. N.J. Apr. 8, 2011)). "In general, settlement is the preferred means of resolving litigation, and there remains a 'strong presumption' in favor of finding a settlement fair. The Court must also keep in mind that a settlement represents a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Deitz*, 2013 WL 2338496, at *4 (internal citations omitted).

The Parties' Agreement was the product of fair and honest negotiations by experienced wage-and-hour class/collective action counsel. Exhibit 4, Declaration of Andrew Dunlap, at ¶¶ 27-28. The Agreement is not illegal, a product of collusion, or against the public interest. *Id.* The Agreement does

not grant preferential treatment to the named plaintiff (LaGard) and does not provide excessive compensation to Plaintiff's Counsel under the circumstances. *See McGee v. Ann's Choice, Inc.*, No. CIV.A. 12-2664, 2014 WL 2514582, at *4 (E.D. Pa. June 4, 2014); *In re Inter-Op Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001). The Parties' Agreement is the product of arm's-length negotiations that occurred after months of hotly contested litigation. *See Lynn's Food Stores*, 679 at 1354 (finding FLSA settlement to fair based on the contested litigation history).

Moreover, the Agreement was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many months. Ex. 4 at ¶¶ 29. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation. *Id.*; *Austin v. Pennsylvania Dep't of Corrs.*, 876 F. Supp 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *Fisher Brothers v. Phelps Dodge Indus.*, Inc., 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

Further, the Parties' Agreement will provide fair pecuniary relief to LaGard and the Settlement Plaintiffs in the form of Settlement Checks in exchange for a limited release of their wage-and-hour claims and eliminates the risks both Parties would face if this complex litigation continued to resolution on the merits. The Parties agree the settlement, including the allocations to LaGard and the Settlement Plaintiffs, is fair and reasonable.

If the Parties had not agreed to settle, both sides would require substantial additional discovery (including numerous costly depositions and likely a motion to compel discovery) to ready this case for summary judgement and trial. Continued litigation would result in a significant expenditure of resources and would likewise place a substantial drain on judicial resources. *Id.* at ¶ 23; *see also Craig v.*

*Rite Aid Corp.*, No. 4:08-CV-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013). Settlement is appropriate, and the Court should not have to needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate. *See Deitz*, 2013 WL 2338496, at *5. Moreover, if the litigation had continued, the Parties would face many obstacles and uncertainties, including motions for conditional certification, summary judgment, and/or decertification, and potentially a trial. The Parties' Agreement fairly compensates LaGard and the Settlement Plaintiffs and eliminates the possibility of dismissal, decertification, or loss at trial or summary judgment and brings them value now (as opposed to years from now). The substantial benefit LaGard and the Settlement Plaintiffs will immediately receive is a significant factor weighing in favor of approval. As is the fact that LaGard, the representative Plaintiff, agrees the terms of the Agreement are fair and reasonable. Plaintiff's positions strongly support the approval of the Agreement.

### C. LaGard's Enhancement Award is Reasonable

The Agreement provides for an Enhancement Award payment to LaGard totaling $5,000.00 in recognition of the services he performed on behalf of all Settlement Plaintiffs. Ex. 1 at ¶ 5. This payment is in addition to LaGard's Settlement Checks he will receive from the Net Settlement Amount.

The proposed Service Award is reasonable and AFS does not object to the Service Award. *See Devine v. Ne. Treatment Centers, Inc.*, No. CV 20-02417, 2021 WL 4803819, at *10 (E.D. Pa. Oct. 14, 2021) (service awards of $5,000 to each named plaintiff, representing less than 3 percent of the settlement fund). The Service Award represents a mere 2% of the Gross Settlement Amount and is intended to recognize LaGard's initiative and efforts on behalf of the Final Settlement Class Members and the time and effort he contributed to this lawsuit and the settlement process.

Through the course of this litigation, LaGard participated in the litigation and settlement process. LaGard expended significant effort and time educating Plaintiff's Counsel regarding his and

similarly situated workers' job experiences, compensation, and hours worked, as well as AFS' policies and procedures. He assisted Plaintiff's Counsel throughout the litigation by providing documents and information related to his work for AFS and actively participated in settlement discussions and the settlement approval process to help ensure he and the Final Settlement Class Members will recover their allegedly unpaid wages. LaGard participated in numerous telephone conferences with Plaintiff's Counsel and their staff over the course of the litigation. And in bringing the claims against AFS relating to its alleged PMWA, WPCLA, and FLSA violations, LaGard took significant risks. Indeed, Lagard faced potential retaliations and blackballing from prospective employers in the industry who, by merely performing a quick Google search of his name, may quickly see he sued his former employer for back wages.

Accordingly, the Court should approve the Service Award to LaGard in the total amount of $5,000.00 as provided in the Parties' Agreement.

### D.  Plaintiff's Counsel's Fee and Costs Award are Reasonable and Customary.

The Parties' Agreement provides that Plaintiff's Counsel's Fee Award amounts to 40% of the Gross Settlement Amount and for reimbursement of Plaintiff's Counsel's out-of-pocket litigation expenses. Specifically, the Parties agreed Plaintiff's Counsel's Fee Award would be $92,000.00 and that Plaintiff's Counsel would receive $3,079.25 to reimburse them for their out-of-pocket litigation expenses. Ex. 1 at ¶ 5. AFS does not oppose Plaintiff's Counsel's application for these payments and costs. Ex. 1.

While courts in the Third Circuit may evaluate the award of attorneys' fees through two established methods (the lodestar approach or the percentage of the recovery approach), the "[p]ercentage of recovery [method] is the prevailing method used by courts in the Third Circuit for wage and hour cases." *Kraus v. PA Fit II, LLC*, 155 F.Supp.3d 516, 533 (E.D. Pa. 2016); *see also In re Diet Drugs*, 582 F.3d at 540 (finding the percentage-of-recovery method is generally favored) (citing *In*

11

*re Prudential Ins. Co.*, 148 F.3d 283, 333 (3d Cir. 1998)). Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) (citation omitted).

In determining what constitutes a reasonable percentage fee, courts consider the following factors: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by Plaintiffs to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of Plaintiff's counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement. *In re Diet Drugs*, 582 F.3d at 541 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000) and *In re Prudential*, 148 F.3d at 342). These factors "need not be applied in a formulaic way" and "in certain cases, one factor may outweigh the rest.'" *In re AT & T Corp.*, 455 F.3d at 166.

### i. Size of the Fund and the Number of Beneficiaries.

The results obtained here represent a significant benefit to LaGard and the Final Settlement Class Members in the face of the many legal and factual risks posed by litigation. Here, the maximum Net Settlement Amount of $129,920.75 will be allocated to LaGard and the Putative Class Members on a pro rata basis dependent upon the number of weeks of overtime at issue during the relevant time period. *See* Ex. 1 at ¶ 9.

### ii. The Absence of Substantial Objections.

To date, there have been no objections to either the settlement terms generally or to the attorneys' fee request specifically. The absence of any objection weighs in favor of the fee request. *See Bredbenner*, 2011 WL 1344745, at *20.

### iii. Plaintiff's Counsel's Skill and Efficiency.

In evaluating the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Chemi v. Champion Mortg.*, C.A. 05-cv-1238, 2009 WL 1470429, at *11 (D. N.J. May 26, 2009) (internal quotations omitted). Here, Plaintiff's Counsel "undertook significant risk to achieve a substantial settlement amount, and should not be penalized for settling the case early in the litigation." *Arrington v. Optimum Healthcare IT, LLC*, No. CV 17-3950, 2018 WL 5631625, at *10 (E.D. Pa. Oct. 31, 2018). To the contrary, the early settlement of potentially costly litigation is commendable. *See Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-CV-01007-NR, 2019 WL 5394751, at *9 (W.D. Pa. Oct. 22, 2019) (counsel's considerable skill "likely facilitated the early and efficient settlement of this matter.").

Here, Plaintiff's Counsel includes attorneys with significant employment law as well as class and collective action wage-and-hour experience. *See* Ex. 4 at ¶¶ 3-6. Plaintiff's Counsel assumed a very real risk in taking on this case. Plaintiff's Counsel took the case on a contingency basis, and was prepared to invest time, effort, and money over a period of years with absolutely no guarantee of any recovery. *Id.* at ¶¶ 18,30. The Parties' Agreement, which involves complex provisions that are specific to Section 216(b)'s collective action provision of the FLSA is a reflection of Plaintiff's Counsel's experience. *Id.* at ¶¶ 3-6. This Agreement was reached after fact discovery, review of class data, and ongoing arm's-length settlement negotiations between counsel for the Parties. *Id.* at ¶¶ 27.

13

The Agreement provides LaGard and the Final Settlement Class Members with substantial benefits without having to wait for years of drawn-out litigation. This factor thus favors the requested fee.

### iv.    The Complexity and Duration of the Litigation.

The Parties engaged in informal discovery of a multitude of documents pertaining to Chemstream's procedures and payments to LaGard and the Putative Class Members were obtained. Given this discovery, this factor weighs in favor of awarding the requested fee. *Keller v. TD Bank, N.A.*, No. CIV.A. 12-5054, 2014 WL 5591033, at *15 (E.D. Pa. Nov. 4, 2014). The parties engaged in analysis of wage-and-hour data for the class. Moreover, further litigation of this case without a settlement would be lengthy and expensive for both Parties, neither of whom desire to continue with this litigation.

### v.    The Risk of Nonpayment.

Plaintiff's Counsel represented LaGard entirely on a contingent basis, with no guarantee of payment, and there were significant hurdles to overcome in achieving the settlement. Ex. 4 at ¶¶ 18,30. Plaintiff's Counsel invested significant time and expense in litigating this matter despite the potential the Court would find no violation of the FLSA or PMWA. Given these considerations, the significant risk of non-payment weighs in favor of the requested fee. *See Brumley v. Camin Cargo Control, Inc.*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *11 (D. N.J. Mar. 26, 2012).

### vi.    Plaintiff's Counsel Devoted Substantial Time to the Case.

Plaintiff's Counsel consisted of a team of attorneys from three law firms, paralegals, and staff all dedicated to working up and prosecuting LaGard and the Putative Class Members' claims. This work included investigation and interviews with LaGard, obtaining statements from LaGard, reviewing documents produced by LaGard, reviewing and analyzing time and payroll data, and engaging in extensive settlement negotiations to try to settle this matter. *See generally* Ex. 4 at ¶¶ 20-21.

14

These efforts support the approval of the fee requested. *See Brumley*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *11.

> vii.    **Fee Awards in Similar Cases Support the Requested Fee Award.**

The requested Fee Award is also consistent with awards in similar cases. *See* Ex. 4 at ¶ 35. The Third Circuit expressly noted fee awards generally range from 19% to 45% of the Gross Settlement Amount. *See Brumley*, 2012 WL 1019337, at *12 (approving fee of one-third of the common fund and citing *In re Gen. Motors.*, 55 F.3d at 822). "In this Circuit, the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%." *Mabry v. Hildebrandt*, No. CV 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015); *see Acevedo*, 2017 WL 4354809 at *18 ("[C]ourts have approved attorneys' fees in FLSA collective and class action settlement agreements 'from roughly 20-45%' of the settlement fund."); *Mabry v. Hildebrandt*, No. CV 14-5525, 2015 WL 5025810, at *1 (E.D. Pa. Aug. 24, 2015) (approving attorneys' fees amounting to 40% of total settlement); *Lyons v. Gerhard's Inc.*, No. 14–6693, 2015 WL 4378514, at *5 (E.D. Pa. July 16, 2015) (approving attorneys' fees amounting to 44% of the total settlement). "Where the fees are set as part of negotiations between the parties, there is a greater range of reasonableness for approving attorney's fees." *Lliguichuzhca*, 948 F.Supp.2d at 366. On balance, then, the percentage fee negotiated by the Parties is not unreasonable relative to the "size of the fund created." *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-CV-01007-NR, 2019 WL 5394751, at *8 (W.D. Pa. Oct. 22, 2019).

In private contingency fee cases, "plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see Craig*, 2013 WL 84928 at *12 ("In this region, '[a]ttorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation").

Here, Plaintiff's Counsels' request for 40% of the Gross Settlement Amount adequately compensates Plaintiff's Counsel for the significant work they did in this case and falls well within the

range of reasonable allocations in the context of awards granted in other, similar cases. *See*, e.g., *Alvarez v. BI Inc.*, Civ. A. No. 16-2705, 2020 WL 1694294, at *7 (E.D. Pa. Apr. 6, 2020) (approving fee award of 40% of the gross settlement amount in FLSA collective action); *Mabry v. Hildebrandt*, Civ. A. No. 14-5525, 2015 WL 502810, at *4 (E.D. Pa. Aug. 24, 2015) (allowing percentage-of-recovery for attorney's fees at 40% of the gross settlement amount); *Lyons v. Gerhard's Inc.*, Civ. A. No. 14-06693, 2015 WL 437514, at *5 (E.D. Pa. July 16, 2015) (approving fee award of 44% of gross settlement amount, noting "[a]s a percentage of total recovery, this fee is on the higher side, but it is not so high as to be unreasonable."); *Erie County Retirees Assoc. v. County of Erie. Pa.*, 192 F.Supp.2d 369, 382-83 (W.D. Pa. 2002) (McLaughlin, J.) (38% of common fund awarded as fees in ADEA collective action case brought pursuant to 29 U.S.C. §216(b)). The Fee Award of approximately 40% of the Gross Settlement Amount also comports with privately negotiated contingent fees negotiated on the open market. *See Bredbenner*, 2011 WL 1344745, at *21.

Accordingly, the fees approved in similar cases further support the requested fee here.

### viii.    Benefits Attributable to Plaintiff's Counsel Relative to Other Groups.

All benefits obtained by Plaintiffs through the proposed settlement can be attributed to the efforts of Plaintiff's Counsel, rather than to government agencies or other groups. Most notably, "[t]here is no indication that the [Department of Labor] was investigating the defendant's overtime compensation practices[.]" *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-CV-01007-NR, 2019 WL 5394751, at *10 (W.D. Pa. Oct. 22, 2019) (quoting *Acevedo v. Brightview Landscapes, LLC*, No. CV 3:13-2529, 2017 WL 4354809, at *19 (M.D. Pa. Oct. 2, 2017)). As a result, "there is nothing to compare," *Id.*, and this factor favors approval.

### ix.    Plaintiff's Counsel's Out-of-Pocket Expenses Should be Approved.

In addition to being entitled to reasonable attorneys' fees, the FLSA provides for the reimbursement of costs. *See* 29 U.S.C. § 216(b). "[C]ounsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately

incurred in the prosecution of the case." *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 226 (E.D. Pa. 2014). Here, Plaintiff's Counsel has agreed that the Cost and Fee Award includes Plaintiff's Counsel's costs and expenses in bringing this action. Plaintiff's Counsel's costs will include reasonable out-of-pocket expenditures such as filing fees, postage, mediation, client meetings, and Westlaw. *See* Ex. 4, ¶ 38; *see also Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (finding expenses such as "(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express service, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, court and witness fees, (9) overtime and temp work, (10) postage, and (11) the cost of hiring a mediator, to be reasonable). All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreement, Chemstream does not object to the request for costs. *See* Ex. 1.

Here, Plaintiff's Counsel's out-of-pocket litigation expenses are capped at $3,079.25. Ex. 1 at ¶ 5. Plaintiff's Counsel's costs include reasonable out-of-pocket expenditures such as filing fees, copying, client meetings, and legal research. Ex. 4 at ¶ 34. The reported expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Agreement and Chemstream does not object to the same. Further, the Agreement appropriately limits Plaintiff's Counsel's recovery to actual costs incurred to date plus the estimated costs to approve and administer the settlement. Ex. 1 at ¶ 5.

**5.  DISMISSAL OF THE LAWSUIT WITH PREJUDICE.**

In addition to approving the Agreement, LaGard requests that the Court dismiss this lawsuit with prejudice. The dismissal of the lawsuit will not prejudice other members of the Putative Class, as they will receive notice of the settlement and an opportunity to make a choice whether to join in the settlement pursuant to the terms of the Agreement, or to refrain from joining the settlement and retaining all rights.

6. CONCLUSION.

For these reasons, the Parties respectfully request that the Court grant the Parties' Joint Motion

to Approve Collective Action Settlement and to Dismiss Lawsuit with Prejudice.

Respectfully submitted,

By: */s/ Andrew W. Dunlap*
    Michael A. Josephson, Esquire
    PA ID No. 308410
    Andrew W. Dunlap, Esquire
    TX Bar No. 24078444
    Alyssa White
    TX Bar No. 24073014
    JOSEPHSON DUNLAP LLP
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    Tel: (713) 352-1100
    Fax: (713) 352-3300
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    awhite@mybackwages.com

    Joshua P. Geist, Esquire
    PA ID No. 85745
    William F. Goodrich, Esquire
    PA ID No. 30235
    GOODRICH & GEIST, PC
    3634 California Ave.
    Pittsburgh, Pennsylvania 15212
    Tel: (412) 766-1455
    Fax: (412) 766-0300
    josh@goodrichandgeist.com
    bill@goodrichandgeist.com

    Richard J. (Rex) Burch, Esquire*
    TX Bar No. 24001807
    BRUCKNER BURCH PLLC
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    Tel: (713) 877-8788
    Fax: (713) 877-8065
    rburch@brucknerburch.com

    ATTORNEYS FOR WILLIAMS AND THE
    HOURLY PENNSYLVANIA EMPLOYEES

18

By: /s/ Richard L. Etter
Richard L. Etter
PA ID No. 92835
**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.**
One PPG Place, Suite 1900
Pittsburgh, PA 15222
Telephone: (412) 230-8963
rick.etter@ogletree.com

*ATTORNEY FOR DEFENDANT*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Joint Motion to Approve Settlement and Dismiss the Case was served on December 18, 2024, via email to all counsel of record.

By: /s/ Andrew W. Dunlap
Andrew W. Dunlap